**Joan CONAN, Plaintiff,**

v.

**EQUITABLE CAPITAL MANAGEMENT CORPORATION and Brian Wruble, Defendants.**

**No. 90 Civ. 1415 (GLG).**

United States District Court,
S.D. New York.

Oct. 17, 1991.

Anne Golden, White Plains, N.Y., for plaintiff.

O'Melveny & Myers, New York City (Alan M. Cohen, Jeffrey I. Kohn, of counsel), for defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

On the eve of trial in this diversity action, defendants move to strike plaintiff's demand for punitive damages in this case. Plaintiff claims her employment was terminated in violation of the New York State Human Rights Law, N.Y.Exec.Law § 296(1)(a) ("HRL"). Conan alleges that her employment was terminated due to discrimination against her because of her sex, age, and physical and mental disabilities. No claim is made under any federal law since the necessary administrative proceedings were not sought. She seeks lost wages, past and future, compensatory damages for, *inter alia*, emotional suffering, and punitive damages in the amount of 15 million dollars.

The question of whether punitive damages are available in a suit of this nature has never been determined by an appellate court in either the state or federal systems. Indeed, this court has acknowledged that it was an open issue, *see O'Brien v. King World Prod. Inc.*, 669 F.Supp. 639, 642 (S.D.N.Y.1987), and because that case was ultimately settled, no definitive decision needed to be reached. *See also Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 510 (S.D.N.Y.1989) (punitive damages under the HRL may well be available).

The only New York State Court decision giving any extended consideration to the question of whether punitive damages are available in a discrimination suit brought under the HRL is *Seitzman v. Hudson River Associates*, 143 Misc.2d 1068, 542 N.Y.S.2d 104 (Sup.1989). In that case, the court started its analysis by noting the well-recognized distinction between administrative remedies and judicial remedies. *See, e.g., Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Then,

relying on a decision of the Appellate Division, whose holding allowed a claim asserting a violation of the HRL to go to the jury, *see Murphy v. American Home Products Corp.*, 136 A.D.2d 229, 232–233, 527 N.Y.S.2d 1, 3 (1st Dep't 1988), the *Seitzman* court stated that by apparently letting a demand for both punitive and compensatory damages accompany this claim to the jury, "*Murphy* appear[ed] to open the door in New York, at least a crack, for an aggrieved party suing in court to allege and prove punitive damages in an appropriate case." 542 N.Y.S.2d at 108. However, in looking for supporting case law, the court's primary citation was to our opinion in *O'Brien v. King World Prod. Inc., supra*, where it was stated that punitive damages *may* be available. On this somewhat weak analysis, the *Seitzman* court concluded that punitive damages were available in a court action under the Human Rights Law.

Relying on *Seitzman*, a recent state trial court allowed an award of punitive damages. *Thoreson v. Penthouse Int'l, Ltd.*, 149 Misc.2d 150, 563 N.Y.S.2d 968 (Sup. 1990).[1] In allowing punitive damages, the *Thoreson* court looked to the policies underlying the making of such awards, opining that punitive damages were warranted where the defendant's conduct "was an egregious violation of equality principles and of a relationship in which the public has demonstrated a strong interest." *Id.*, 563 N.Y.S.2d at 973.

However, in reaching their conclusion that punitive damages could be awarded under the Human Rights Law, neither the *Seitzman* or *Thoreson* courts considered the legislative history or statutory construction of the Human Rights Law. A review of the legislative history and a consideration of the effects of statutory construction persuades us that no claim for punitive damages should be allowed in this case. We must respectfully disagree, therefore, with the holdings of these state trial courts.

---

1. *Thoreson* is on appeal and the issue was argued to the First Department on September 2, 1991. While it would be desirable to have the decision of a New York appellate court on a matter of New York law, we doubt that the case will be decided before this trial is completed.

New York's Human Rights Law was amended in 1968 to create a private cause of action. In a statement of their intent, the drafters of the amendment emphasized that the individual subjected to a discriminatory practice should have a right to go to court seeking damages *caused* by discriminatory practices or other appropriate relief. Governor's Committee, *Report to Governor Nelson A. Rockefeller*, at 41 (1968) (emphasis added). Punitive damages, however, are designed to deter conduct and not to award damages for injuries caused by the conduct. It follows, therefore, that punitive damage awards were not contemplated by the New York legislature.

This construction is buttressed by the fact that in 1982 the New York State Assembly Committee on Human Rights recommended that the state court should be empowered to award exemplary damages in human rights cases. *In Pursuit of Justice*, Report of the N.Y. State Assembly Subcommittee on Human Rights, at 10 (March 25, 1982). This report referred to a pending bill which would have enacted such a change. However, that bill was never adopted. This confirms that the Legislature did not consider punitive damages to be available under the Human Rights Law.

An additional consideration is the fact that the New York procedures were originally geared toward encouraging administrative action. Since it is clear that punitive damages can not be obtained administratively, *see Cullen v. Nassau County Civil Service Commission*, 53 N.Y.2d 492, 442 N.Y.S.2d 470, 425 N.E.2d 858 (1981), the effect of allowing such an award in court would be to discourage the very type of administrative procedures that the New York State Legislature sought to encourage.

A corollary consideration is the fact that punitive damages are not available under the equivalent federal statutes, namely, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, or the Age Dis-

crimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* The federal courts are already confronted with pendent state claims in many employment discrimination cases because the state statutes already permit a broader range of damages than are available under the federal statutes. If we add punitive damages to that list under state law, the incentive for adding pendent state claims is greatly increased. In addition, recourse to the federal statutes will become highly unattractive except as a device to create federal jurisdiction.

For all of the foregoing reasons, we grant the motion to strike the punitive damages claim. Recognizing that this question is now before the First Department of New York's Appellate Division, we warn the parties that should a decision in that case be rendered prior to the conclusion of this trial, this opinion will be reconsidered.[2]

SO ORDERED.

---

**2.** However, we always have the option of determining that the plaintiff's proof that the defendants' actions were wanton and reckless is insufficient to allow a submission of a punitive damage claim to the jury even if it were allowable with adequate proof under the New York statute.