William **BABCOCK**, Plaintiff,

v.

**CAE–LINK CORPORATION, Link Flight Simulation Corp., and CAE Industries, Ltd., Defendants.**

No. 91–CV–251 (CGC).

United States District Court, N.D. New York.

Feb. 15, 1995.

Twining, Bemia & Steflik, Binghamton, NY by Scott B. Anglehart, N.Y., for plaintiff.

Hinman, Howard & Kattell, Binghamton, NY by Paul T. Sheppard, for defendant CAE–Link Corp.

## OPINION

CHIN, District Judge.[1]

This is an employment discrimination case brought by plaintiff William Babcock under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA") and the New York Human Rights Law, N.Y.Exec.Law § 290 et seq. Defendant CAE–Link Corporation ("CAE–Link") moves for summary judgment dismissing the complaint or, in the alternative, for partial summary judgment dismissing plaintiff's claims for liquidated and punitive damages.[2] For the reasons stated below, the motion is denied to the extent it seeks dismissal of the complaint and the claim for liquidated damages. It is granted to the extent it seeks dismissal of plaintiff's claims for breach of contract and for punitive damages. Defendant also moves to strike two affidavits submitted in opposition to the motion for summary judgment. That motion is denied.

Plaintiff moves for leave to amend the complaint and a stipulation concerning the pleadings and to compel defendant to respond to certain discovery requests. The motion is granted as to the proposed amendments of the complaint and stipulation and denied as to the request to compel discovery.

## FACTS

Babcock was employed by CAE–Link, a manufacturer of training simulators for military applications, for nearly 32 years. During his employment, plaintiff held many different positions, and eventually was promoted to the position of integrated logistics support ("ILS") program manager in the ILS program management department in 1981. In June 1989, there were 13 ILS managers in the ILS management department, working

1. United States District Judge for the Southern District of New York, sitting by designation.

2. In separate stipulations, plaintiff's claims against defendant Link Flight Simulation Corp. and defendant CAE Industries Ltd. were discontinued.

on various programs. Plaintiff was assigned to a new program—the LHX program. By that time, plaintiff had over 12 years of experience as a logistics coordinator/manager, making him one of the most experienced managers in the department.

In the spring of 1989, CAE–Link underwent a major restructuring and company-wide reduction in force, which resulted in the lay-off of approximately 150 employees, including plaintiff. At the time of his discharge on June 7, 1989, plaintiff was nearly 58 years old. Two other ILS managers were discharged at the same time as plaintiff, both of whom were younger; the youngest of the three was later rehired into the same department. The remaining ILS managers either stayed in their positions or were moved to different departments. One of the remaining ILS managers, who was younger than plaintiff, was given responsibility for plaintiff's LHX program.

Plaintiff filed a charge with the New York State Division of Human Rights (the "SDHR") on April 3, 1990.[3] In his charge he claimed both that he was discriminated against on the basis of his age and that CAE–Link's policy was to discriminate against all older workers. The SDHR dismissed plaintiff's complaint on December 5, 1990. He subsequently commenced this action in state court on February 4, 1991. In his complaint, plaintiff alleged that defendant discriminated against him on the basis of his age.

In support of its motion for summary judgment, defendant claims that plaintiff's lay-off was due to the reduction-in-force. Defendant contends that plaintiff was chosen for dismissal because he was not qualified to work on a new program, had previously been unsuccessful as a logistics manager, and had poor performance ratings.

### Discussion

The ADEA provides that it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individ-ual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Human Rights Law affords similar protection. *See* N.Y.Exec.Law. § 296(1)(a) (McKinney 1993).

### 1. *Jurisdiction*

■ Defendant contends that this Court lacks jurisdiction to hear plaintiff's claims under the ADEA because plaintiff's SDHR charge purportedly did not contain a charge of intentional discrimination against plaintiff individually. Defendant relies on paragraph 8 of the SDHR complaint, in which plaintiff alleged that "the effect and pattern of the policy and practices of [defendants] ... has been to unlawfully deny to myself and other employees our rightful wages ... and has otherwise adversely affected the terms, conditions and privileges of employment, or status of employees, because of such employees' ages." Defendant argues that the SDHR complaint failed to allege any disparate treatment of plaintiff but rather merely alleged that the lay-off had a disparate impact on older workers.

■ Of course, defendant is correct in its assertion that this Court has jurisdiction only over claims that are "reasonably related to the allegations in plaintiff's EEOC complaint." *Gomes v. Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir.1992) (quoting *Kirkland v. Buffalo Board of Education*, 622 F.2d 1066, 1068 (2d Cir.1980)); *see also* 29 U.S.C. § 626(d). Defendant's reading of plaintiff's SDHR complaint, however, is incorrect.

Plaintiff's claims clearly are reasonably related to the allegations contained in his SDHR complaint, for the SDHR complaint did assert a disparate treatment claim. Plaintiff alleged in his SDHR complaint that: 1) "as a result of the Respondent's actions, the Complainant herein has suffered loss of wages, [and other benefits] all due to Respondent's unlawful discrimination based on age" and 2) "Complainant herein is over age

---

**3.** Plaintiff "simultaneously ... filed a complaint with the Equal Employment Opportunity Commission (hereinafter referred to as the 'EEOC') pursuant to the authority delegated to the Divi-sion of Human Rights to accept the aforementioned verified complaint as a charge of discrimination on the basis of age under the ADEA." (Complaint, ¶ 11).

of 40 and charges the respondent with discriminating against him unlawfully because of his age in violation of the ADEA and the New York State Human Rights Law." (Babcock SDHR Complaint, ¶¶ 9, 10). Hence, plaintiff asserted both disparate impact and disparate treatment theories in his SDHR complaint, and this Court has jurisdiction over plaintiff's claims of discriminatory treatment. *See Gomes v. Avco Corp.*, 964 F.2d 1330, 1334–35 (2d Cir.1992) (in reversing district court's dismissal of disparate impact claim, appeals court held that EEOC charge presented both disparate impact and disparate treatment theories).[4]

### 2. *The Motion to Strike Affidavits*

■ Defendant moves to strike the affidavit of Gordon J. Stred, a former vice-president with CAE–Link, which was submitted by plaintiff in his papers in opposition to the motion for summary judgment. The affidavit, dated July 24, 1990, was filed in another employment discrimination case against defendant, *McGuigan v. CAE–Link Corp.*, 91 Civ. 250 (Broome County), and generally states that defendant wanted younger employees and took age into consideration in granting promotions and making other employment decisions. Defendant maintains that the affidavit should be stricken because: 1) Mr. Stred does not have personal knowledge of plaintiff's work or discharge; 2) the affidavit was submitted in a state court proceeding and is over three years old; and 3) the affidavit contains hearsay or other inadmissible evidence. Each of these arguments is rejected.

First, while it is true that Mr. Stred did not have personal knowledge of plaintiff's work or discharge, as a vice-president of the defendant company he did have personal knowledge as to defendant's employment policies, which might have had an impact on its decision to discharge plaintiff.[5]

Second, it is immaterial that the affidavit was submitted in a state court proceeding or that it is over three years old: it is a sworn statement submitted in a case involving the same defendant. Moreover, the affidavit is timely in the sense that it was executed less than a year after plaintiff was discharged.

Finally, the statements in the affidavit that arguably constitute hearsay may be admissible at trial on other grounds. Accordingly, the motion to strike the Stred affidavit is denied.

Defendant also moves to strike portions of plaintiff's affidavit in opposition to the motion for summary judgment on the basis that they are not based on personal knowledge or are conclusory. The request is denied. Each of the statements defendant seeks to strike is either within plaintiff's personal knowledge or was not relied on by this Court in deciding defendant's motion for summary judgment.

### 3. *Summary Judgment*

#### A. *The Applicable Legal Standards*

The standards applicable to motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). Accordingly, the court's task

---

4. Defendant's reliance on *Brown v. Puget Sound Elec. App. & Train. Trust*, 732 F.2d 726 (9th Cir.1984), is misplaced. In that case, the plaintiff's EEOC charge only asserted a discriminatory impact claim based on an age requirement maintained by the defendant company. Her subsequent court action against the company asserted claims of intentional discrimination. The appeals court reversed the district court's award of damages, holding that the plaintiff failed to exhaust her administrative remedies with respect to her claim of disparate treatment before commencing suit in federal court. This analysis is inapplicable here, since plaintiff in the present case alleged both theories of discrimination in his SDHR complaint.

5. As the First Circuit has held,

> [C]ircumstantial evidence of a discriminatory atmosphere at a plaintiff's place of employment is relevant to the question of motive in considering a discrimination claim. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decision making processes and to the influences behind the actions taken with respect to the individual plaintiff.

*Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir.1987).

is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248–49, 106 S.Ct. at 2510–11 *(citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. As the Court held in *Anderson,* "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). With these standards in mind, I turn to the defendant's motion for summary judgment.

### B. *The Claim of Disparate Treatment* [6]

Claims of disparate treatment brought under the ADEA are subject to the three-step analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Equal Employment Opportunity Commission v. Ethan Allen, Inc.,* 44 F.3d 116, 119 (2d Cir.1994). Under the *McDonnell Douglas* test, plaintiff has the initial burden of establishing a prima facie case of unlawful discrimination. If that burden is met, defendant then must offer a legitimate, non-dis-

criminatory reason for plaintiff's discharge, at which point the plaintiff must prove by a preponderance of the evidence that the proffered reason is pretextual. *Id.* (citing *St. Mary's Honor Center v. Hicks,* — U.S. —, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The same procedure applies to an action brought under the Human Rights Law. *Gallo v. Prudential Residential Services Ltd. Partnership,* 22 F.3d 1219, 1225 (2d Cir. 1994).

### 1. *Prima Facie Case of Discrimination*

To establish a prima facie case of discriminatory treatment on the basis of age, plaintiff must show that: 1) he belongs to a protected age group; 2) he was qualified for his position or for another position that became available at the time he was discharged; 3) he was discharged or not hired despite his qualifications; and 4) his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his age. *Gallo,* 22 F.3d at 1224. Plaintiff's burden of proof to survive summary judgment at the prima facie stage is *de minimis. Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994) (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)). Based on the record before the Court, it is clear that plaintiff has satisfied his *de minimis* burden in alleging a prima facie case of discrimination.

There is no dispute that plaintiff has satisfied the first and third elements: plaintiff was 57 years old at the time of his discharge from CAE–Link. As to the second element, plaintiff has presented evidence to show that he was qualified for his job and that he performed his duties satisfactorily, and submits his work appraisals from 1976 to 1989 as evidence of his qualifications. These appraisals show that plaintiff was given good to excellent ratings during his employment with defendant. (Babcock Aff. ¶ 5 & Exh. B). Plaintiff has also alleged that he was

---

**6.** Defendant also moves for summary judgment dismissing plaintiff's claim of disparate impact. Since the complaint does not set forth a disparate impact cause of action, that portion of defendant's motion does not have to be reached. Plaintiff may, however, submit evidence of any

alleged disparate impact to bolster his claim of disparate treatment. *See Hudson v. International Business Machines Corp.,* 620 F.2d 351 (2d Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980).

qualified for the positions that remained after the corporate restructuring took place: he states in his affidavit that he was "equally well qualified to handle the LHX Program as Mr. Huth [his replacement]" and that he was at least as qualified as the other ILS managers who were retained. (Babcock Aff. ¶¶ 8, 9).

Defendant's argument that plaintiff did not prove his qualifications for his position must be rejected. Defendant submits an affidavit from Eugene Berndt, plaintiff's supervisor in the ILS Department in support of its contention, in which Berndt stated that plaintiff lacked advanced technical knowledge and motivation to become current in the field, and that plaintiff was not qualified for his position. (Berndt Aff. ¶¶ 23–36). These assertions directly contradict plaintiff's allegations, and at this juncture I must resolve this conflict in the evidence in favor of the non-moving party. *See Gallo v. Prudential Residential Services Limited Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994).[7]

■■■ The next inquiry is whether plaintiff has met his *de minimis* burden of showing circumstances giving rise to an inference of age discrimination. To meet this burden, plaintiff alleges that: 1) he had received positive work appraisals for the 13 years prior to his termination; 2) he was one of the best qualified ILS managers; 3) he had the longest service with defendant of all of the ILS managers; 4) he had more experience than any of the retained ILS managers with the exception of one who was on disability; and 5) he was replaced by a younger manager with less experience. Plaintiff has met his burden of showing circumstances giving rise to an inference of age discrimina-

tion.[8] Thus, the record plainly shows that plaintiff presented sufficient evidence of a prima facie case of discrimination. *See Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir. 1991) (circumstances giving rise to inference of age discrimination may be satisfied by a showing that the position was ultimately filled by a younger person).

## 2. *Legitimate, Non-discriminatory Reason for Discharge*

■■■ Since plaintiff has shown a prima facie case of discriminatory treatment, defendant bears the burden of articulating legitimate, non-discriminatory reasons for discharging plaintiff. Defendant maintains that plaintiff's lay-off was due to a company-wide reduction in force caused by the downsizing and restructuring of the company, conducted in an unbiased manner. (Berndt Aff. ¶¶ 8–22). The restructuring resulted in the lay-off of some 150 employees and eliminated four ILS manager positions. Plaintiff was purportedly chosen as a candidate for lay-off because he had recently been assigned to the LHX program and did not have a superior work history. (Berndt Aff. ¶¶ 23–36). Based on the record before the Court, defendant has articulated legitimate, non-discriminatory reasons for plaintiff's discharge. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 107 (2d Cir.1994) (defendant met its burden where it submitted affidavits showing that the plaintiff's discharge was due to a reduction in force necessitated by a business downturn).

## 3. *Pretext*

■■■ Plaintiff next has the burden of showing that defendant's stated reasons for

7. Indeed, the allegations that plaintiff lacked advanced technical knowledge and the motivation to become current in the field could be construed as supporting plaintiff's claim of discrimination: his supervisors apparently felt that he was too old to learn something new.

8. Defendant's argument that plaintiff did not show circumstances giving rise to an inference of discrimination because he testified that he was not told by defendant that his discharge was due to his age is rejected. It is rare that an employer would inform a discharged employee that his dismissal was due to illegal motives. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 31

(2d Cir.1994); *see also Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1043 (2d Cir.1979), citing *U.S. v. City of Black Jack, Missouri*, 508 F.2d 1179, 1185-86 (8th Cir.1974), *cert. denied*, 422 U.S. 1042 (1975) (in discrimination cases, "clever men may easily conceal their motivations"). Victims of discrimination, therefore, are "usually constrained to rely on circumstantial evidence," *Chambers* at 31, and "direct, smoking gun, evidence of discrimination is clearly not required for [a] plaintiff to prevail." *Richards v. New York City Board of Education*, 668 F.Supp. 259, 265 (S.D.N.Y.1987), *aff'd*, 842 F.2d 1288 (2d Cir. 1988).

his discharge, the reduction in force brought about by a company restructuring and his lack of qualifications for the job, are a pretext for intentional age discrimination. In the summary judgment context, this burden requires plaintiff to establish a genuine issue of material fact "either through direct, statistical or circumstantial evidence as to whether [defendant's] reason for discharging [him] is false and whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Services, Limited Partnership*, 22 F.3d at 1224. Plaintiff may show pretext by relying on the same evidence used to establish his prima facie case, or by presenting additional evidence to show that defendant's reasons for his discharge were false. *Id.* at 1226.

To rebut defendant's contention that he was unqualified for his position or for any position within the restructured company, plaintiff relies on the same evidence that he used to establish his prima facie case, *i.e.*, evidence of his qualifications, seniority, and experience. In addition, he relies on evidence of a discriminatory atmosphere as well as evidence that the lay-off had a disparate impact upon older employees. In support of these allegations, he submits: 1) the affidavit of Gordon J. Stred, the former vice president, in which Mr. Stred states that defendant "wanted to focus more on youth in the structure of the company" (Stred Aff. ¶ 3); 2) the testimony of defendant's assistant secretary and the administrator, manager, coordinator and vice-president of human resources, each of whom testified in another case involving defendant that age was considered in determining which employees were to be laid-off; and 3) a memorandum from the director of human resources that states that only 40% of the work-force at defendant's Binghamton, New York facility was over 40 years old, while 69% of the laid-off employees were over 40.

Plaintiff also testified in his deposition that there seemed to be a "very high percentage of older people" who were affected by the lay-off, and that a retirement package was offered only to employees who were more than 55 years old, both during the May/June 1989 lay-off and also in December 1988. (Babcock Dep. at 207). In support of this assertion, plaintiff produced a list of eleven older men who were dismissed at the same time plaintiff was discharged, who apparently were replaced by younger employees. (Babcock Dep. at 303). Plaintiff also claims that one of the younger ILS managers who was discharged was rehired into the same department, but that plaintiff was not offered the opportunity to interview for that position.

Hence, plaintiff has presented evidence to show that defendant's reasons for discharging him were pretextual, notwithstanding defendant's legitimate reduction-in-force. As the Second Circuit has held, "[a]lthough an employer is certainly entitled to reduce its force ... it may not discharge an employee 'because' of [his] age." *Gallo v. Prudential Residential Services, Limited Partnership*, 22 F.3d at 1226; *see also Maresco v. Evans Chemetics*, 964 F.2d 106, 111 (2d Cir.1992). Here, plaintiff has established, through direct, circumstantial and statistical evidence, that a genuine issue of material fact exists as to whether it is more likely than not that a discriminatory reason motivated defendant to discharge him. *See Gallo*, 22 F.3d at 1224; *see also Maresco*, 964 F.2d at 113 (circumstantial evidence provided basis for plaintiff to establish pretext). A reasonable jury could conclude based on the record before this Court that defendant's actions were motivated at least in part by plaintiff's age. Accordingly, summary judgment is inappropriate and defendant's motion for summary judgment dismissing the complaint is denied.

## C. *The Claims for Punitive and Liquidated Damages*

█ Defendant moves in the alternative for partial summary judgment dismissing plaintiff's claims for punitive and liquidated damages. Plaintiff's counsel states in his affidavit in opposition to the motion for summary judgment that plaintiff "stipulates to an order dismissing plaintiff's claims for punitive damages." Defendant, however, asserts that plaintiff is still seeking punitive damages for his Human Rights Law claim. To the extent that assertion is correct, the motion for partial summary judgment dismissing

plaintiff's claims for punitive damages is granted, since punitive damages are not available in an action commenced under New York's Human Rights Law. *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1190–91 (2d Cir.1992) (citing *Conan v. Equitable Capital Mgmt. Corp.*, 774 F.Supp. 209, 211 (S.D.N.Y. 1991)).

Defendant's request for dismissal of plaintiff's claim for liquidated damages, however, is denied. In light of the evidence discussed above in my ruling denying defendant's motion for summary judgment dismissing the complaint, and drawing all reasonable inferences in plaintiff's favor, genuine issues of material fact exist as to whether defendant's conduct was willful.

### D. *The Breach of Contract Claim*

Defendant moves for summary judgment dismissing plaintiff's breach of contract claim based on the employment manual. Plaintiff does not discuss this portion of the motion in his opposition papers, and apparently does not oppose it. Accordingly, defendant's motion for partial summary judgment dismissing the breach of contract claim is granted.

### 4. *The Motion to Amend the Complaint and Stipulation*

#### A. *The Complaint*

■ Plaintiff seeks to amend his complaint to more particularly state a claim for liquidated damages. Plaintiff initially brought this action in state court and his original complaint requested that the court "award plaintiff liquidated damages as provided for in the ADEA."

Defendant opposes the motion on the grounds that it is untimely and the plaintiff is guilty of undue delay. A stipulated order dated June 28, 1993 required that applications to amend pleadings or any motions "be made on or before March 1, 1994." Plaintiff filed the motion to amend on February 28, 1994, but omitted the return date, which he provided on March 2, 1994. Defendant contends that the motion was therefore not

"made" until March 2, 1994, one day after the cut-off date. Defendant also maintains that plaintiff knew that his liquidated damages claim was insufficiently pled but failed to take any action until after discovery had closed.

Motions to amend should be liberally granted, unless there has been undue delay, bad faith, dilatory motives or undue prejudice to the opposing party. *See* Fed.R.Civ.P. 15(a); *see also Guinness Mahon Cayman Trust Ltd. v. Windels, Marx, Davies & Ives*, 684 F.Supp. 375, 381 (S.D.N.Y.1988) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). There is no undue prejudice to defendant in this case. Defendant was given adequate notice of plaintiff's intention to seek liquidated damages. While there may have been some delay in bringing the instant motion, mere delay is insufficient to deny a motion to amend. *See Journal Pub. Co. v. American Home Assur. Co.*, 771 F.Supp. 632, 637 (S.D.N.Y. 1991) (*citing Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987)). Moreover, the motion in fact was filed before the March 1, 1994 deadline, and defendant's hypertechnical argument that it was not is rejected. Accordingly, plaintiff's motion to amend the complaint to more particularly state a claim for liquidated damages is granted.[9]

#### B. *The Stipulation*

Plaintiff also moves to amend a stipulation for partial discontinuance dated December 21, 1991 (the "Stipulation"). The Stipulation discontinued plaintiff's claims for compensatory damages that were contained in his first and second causes of action. Plaintiff seeks to amend the Stipulation to clarify that the compensatory damages claims are discontinued only as they relate to claims for damages for mental anguish, humiliation, pain and suffering, and not for lost wages, benefits, etc. Defendant does not oppose this portion of the motion. Accordingly, plaintiff's motion to amend the stipulation is granted.

---

**9.** Defendant's argument that leave to amend should be denied because plaintiff's claim of wilfulness has no merit is rejected in light of my

denial of defendant's motion for summary judgment.

### 5. *Plaintiff's Motion to Compel Discovery*

■ Plaintiff moves to compel defendant to respond to certain outstanding discovery requests served on defendant on December 30, 1993, the cut-off date for discovery. The discovery deadline in this case, originally set for December 31, 1991, was extended four times at plaintiff's request. Plaintiff failed to ask for an extension of the December 30, 1993 deadline, however, and instead chose to wait until the last day of discovery to serve his requests. Under the circumstances, the motion to compel discovery is denied.

## CONCLUSION

Defendant's motion for summary judgment dismissing the complaint is denied, except that it is granted with respect to plaintiff's claim for breach of contract. The alternative request for partial summary judgment dismissing plaintiff's claim for liquidated damages is also denied; the request for partial summary judgment dismissing the claim for punitive damages is granted. Defendant's motion to strike the affidavits is denied.

Plaintiff's motion to amend the complaint and stipulation is granted. Plaintiff's motion to compel discovery is denied.

SO ORDERED.

United States District Court, N.D. New York.