**Gary and Schelley EVANS, husband and wife, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois insurance corporation, Defendant.**

**No. 02–CV–935–H(J).**

United States District Court, N.D. Oklahoma.

June 13, 2003.

---

Timothy Edward McCormick, William David Perrine, Perrine, McGivern, Redemann, Reid, Berry & Taylor PLLC, Tulsa, OK, for plaintiffs.

David Alden Walls, A. Michelle Campney, McKinney & Stringer PC, Oklahoma City, OK, Patrick Hoyt Kernan, Jason Ronald Jenkins, McKinney Stringer PC, Tulsa, OK, for defendant.

## ORDER

JOYNER, United States Magistrate Judge.

Before the Court are the following motions taken under advisement at the June 11, 2003 hearing in the above-titled action: (1) Defendant's Motion to Compel Plaintiffs to Respond to Interrogatories and Requests for Production of Documents [Doc. No. 36]; (2) Defendant's Motion for Protective Order regarding Notices to Take Depositions of its Top Executive Officers, Edward Liddy, Thomas Wilson, and Dan Hale [Doc. No. 44]; and (3) Defendant's Motion for Protective Order with regard to 30(b)(6) Notice [Doc. No. 52]. The Court additionally ruled on Defendant's Motion for Leave to List an Expert Witness on Bad Faith at the hearing. [Doc. No. 56].

For the reasons discussed below, the Court **DENIES** Defendant's Motion to Compel [Doc. No. 36], except as to the production of any agreements of sale or appraisals, which Plaintiffs have agreed to produce, to the extent such documents exist. The Court **GRANTS** Defendant's Motion for Protective Order Prohibiting the Depositions of its Top Executive Officers, Edward Liddy, Thomas Wilson, and Dan Hale.[1] [Doc. No. 44]. The Court **GRANTS** Defendant's Motion for Protective Order regarding Plaintiffs' Rule 30(b)(6) Deposition Notice [Doc. No. 52], and holds that the disputed areas of Plaintiffs'

---

1. At the hearing, Plaintiffs withdrew their notice to take the deposition of Thomas Wilson.

Rule 30(b)(6) Notice are properly resolved by the protective order submitted by Defendant, which is attached hereto. The Court **GRANTS** Defendant's Motion for Leave to List an Expert Witness on Bad Faith. [Doc. No. 56]. The date for listing an expert witness on bad faith is extended to July 1, 2003, for the sole purpose of allowing Defendant to add a witness on bad faith. The expert report shall be submitted on or before July 7, 2003.

## I. INTRODUCTION

This case involves a dispute arising from Plaintiffs' claims against their homeowners insurance policy, issued by Defendant Allstate, for successive fire losses causing damage to their home. The first fire occurred after the house was struck by lightning around October 10, 2001. A second fire occurred during the pendency of Plaintiffs' initial claim on December 24, 2001, when Plaintiffs utilized a stove to prevent the pipes in the house from freezing.

Plaintiffs' homeowners policy is in the amount of $77,000.00. Defendant states that it has already paid Plaintiffs in excess of $53,000.00 for the damage. However, Plaintiffs maintain that the house is infested with mold and, therefore, uninhabitable. Defendant contends that Plaintiffs have refused to make repairs, and that their failure to mitigate damages has resulted in the house remaining vacant.

Plaintiffs have sued Allstate Insurance Company for breach of contract, breach of the implied duty of good faith and fair dealing, and intentional infliction of emotional distress. Plaintiffs additionally allege that Allstate engages in institutional practices in bad faith to the detriment of its insureds.

## II. DISCUSSION

### A. DEFENDANT'S MOTION TO COMPEL PLAINTIFFS TO RESPOND TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS [DOC. NO. 36].

Defendant's Motion to Compel seeks adequate responses to the following interrogatories and requests for production:

(1) Interrogatory No. 14 (First Set): Regarding Plaintiffs' gross household income for 1999, 2000, and 2001;

(2) Request for Production No. 10 (First Set): Requesting Plaintiffs' tax documents from 1999–2001;

(3) Request for Production No. 5 (Second Set): Requesting Plaintiffs' checking and savings account bank statements for 2000–2001;

(4) Request for Production No. 6 (Second Set): Requesting a copy of Plaintiffs' current credit report;

(5) Request for Production No. 7 (Second Set): Requesting copies of Plaintiffs' federal and state tax returns for 2000–2001;

(6) Request for Production No. 8 (Second Set): Requesting all W–2s from Plaintiffs' employer(s) for the past 10 years;

(7) Request for Production No. 9 (Second Set): Requesting authorizations for release of Plaintiffs' employment records; and

(8) Request for Production No. 10 (Second Set): Requesting Plaintiffs' mortgage records.

Defendant argues that Plaintiffs are seeking damages for "financial loss, embarrassment, humiliation, and mental pain and suffering," by stating that they have "sustained a loss of enjoyment in life being unable to live in their home [and] sustained emotional distress." *See* Plaintiffs' First Amended Complaint. Accordingly, Defendant maintains that, because Plaintiffs have put their financial condition, humiliation, embarrassment, mental pain and suffering, and loss of enjoyment of life at issue, the requested information is relevant under Rule 26(b)(1) to fully discover the extent of Plaintiffs' damage. Defendant contends that obtaining key information about Plaintiffs' finances is necessary because the damages claimed are inextricably intertwined with, and bear directly upon, Plaintiffs' financial condition.

At the hearing, Defendant submitted four cases, which it argues support its request for the above-requested financial information. There is little dispute as to the applicable law governing the request. It is well capsuled in

the case of *Fields v. General Motors Corp.,* 1996 WL 14040 (N.D.Ill.1996), in which the court noted that "[w]hile courts have been reticent to compel taxpayers to disclose income tax return information merely because they have become parties to a lawsuit, they nonetheless, have compelled production of income tax returns 'where a litigant himself tenders an issue as to the amount of his income.'" *Id.* at *4. The *Fields* Court relied on *Fed. Sav. & Loan Ins. Corp. v. Krueger,* 55 F.R.D. 512 (N.D.Ill.1972), in which the court wrote:

> [i]f this were a case where the taxpayer had made an issue of his income such as claiming loss due to injury, there would be no question that he had waived the confidentiality of his [income tax] returns and had thereby opened them upon to scrutiny by his opponent. Unless a litigant himself makes an issue of his income, his income tax returns are not subject to discovery ... To compel the taxpayers themselves to furnish copies of their returns unless they have waived that right by making an issue of their income would be a subterfuge and defeat the very purpose of the [income tax confidentiality] statute.

*Id.* at 514.

■ The question here is whether Plaintiffs have placed the amount of their income at issue. The Court finds that Plaintiffs have not. Plaintiffs have stipulated that they are not pursuing lost income, and that the financial loss prayed for in their complaint is the financial loss or damage to the house. The four cases submitted by Defendant at the hearing are distinguishable on their facts. In *Fields v. General Motors Corp.,* 1996 WL 14040 (N.D.Ill.1996), plaintiffs prayed for lost profits. In *Biliske v. American Live Stock Ins. Co.,* 73 F.R.D. 124 (W.D.Okla.1977), plaintiffs claimed their business and reputation were damaged. Plaintiff in *Matchen v. McGahey,* 455 P.2d 52 (Okla.1969), alleged a restriction on her gainful employment due to her injuries. Finally, in *Buntzman v. Springfield Redevelopment Auth.,* 146 F.R.D. 30 (D.Mass.1993), plaintiff asserted that he was financially able to develop the property at issue.

If, at trial, Plaintiffs should place their financial condition at issue, then inquiry into Plaintiffs' financial records would be appropriate. Defendant's Motion to Compel is **DENIED** except as to the production of any agreements of sale or appraisals, which Plaintiffs have agreed to produce, to the extent such documents exist. [Doc. No. 36].

**B. DEFENDANT'S MOTION FOR PROTECTIVE ORDER REGARDING NOTICES TO TAKE DEPOSITIONS OF ITS TOP EXECUTIVE OFFICERS, EDWARD LIDDY, THOMAS WILSON, AND DAN HALE [DOC. NO. 44].**

Defendant additionally moves the Court for a protective order prohibiting depositions of its "apex" officers, currently noticed for deposition on June 18, 2003, in Chicago, Illinois. Plaintiffs seek to depose the following "apex" officers: (1) Edward Liddy ("Liddy"), Chairman, President, and Chief Executive Officer ("CEO") of Allstate Insurance Company; (2) Thomas Wilson ("Wilson"), Senior Vice–President of Allstate Insurance Company; and (3) Dan Hale ("Hale"), Senior Vice–President and Chief Financial Officer ("CFO") of Allstate Insurance Company. At the hearing, Plaintiffs withdrew their notice to take the deposition of Thomas Wilson.

■ Defendant contends that the Senior Corporate Officers Plaintiffs seek to depose have no unique personal knowledge of the matter, and that Plaintiffs' requests are burdensome, irrelevant, and solely for the purpose of harassment and abuse. Moreover, Defendant notes that Plaintiffs have taken the depositions of all adjusters and supervisors involved in handling Plaintiffs' claims.

Defendant's Motion for Protective Order prohibiting the depositions of Liddy and Hale is **GRANTED.** [Doc. No. 44]. The law governing taking depositions of "apex" employees is well articulated in *Folwell v. Hernandez,* 210 F.R.D. 169 (M.D.N.C.2002). In noting Sara Lee Corporation's reliance on the decision in *Baine v. General Motors,* 141 F.R.D. 332 (M.D.Ala.1991), the *Folwell* Court stated:

> The *Baine* Court held that Rule 26(b) gives the court power to regulate harassing or burdensome depositions, and that unless a high level executive has unique personal knowledge about the controversy, the court should regulate the discovery

process to avoid oppression, inconvenience, and burden to the corporation and to the executive....

....

Moreover, the oral deposition of a high level corporate executive should not be freely granted when the subject of the deposition will be only remotely relevant to the issues of the case.

See *Folwell*, 210 F.R.D. at 173–74 (citing *Harris v. Computer Assoc. Int'l, Inc.*, 204 F.R.D. 44 (E.D.N.Y.2001)).

In this case, the employees in question have filed affidavits stating that they have no personal knowledge of the facts of this case. Plaintiffs argue that the depositions are necessary to prove their theory that a pervasive practice of inadequate supervision over Allstate claims adjusters exists within the corporation. As such, Plaintiffs argue that they have the right to pierce the corporate veil of Allstate Insurance Company and utilize information obtained regarding additional investment income for consideration in Plaintiffs' punitive damages claims. The Court finds that, to the extent the Plaintiffs have a right to pursue these issues, Allstate has already provided adequate information, or that the information can alternately be obtained from other sources without deposing these "apex" officers. This holding is in accord with *Folwell v. Hernandez*, 210 F.R.D. 169 (M.D.N.C.2002), *Baine v. General Motors*, 141 F.R.D. 332 (M.D.Ala.1991), and *State Farm Mutual Auto. Ins. Co. v. Campbell*, —— U.S. ——, 123 S.Ct. 1513, 155 L.Ed.2d 585, 2003 WL 1791206 (2003). Plaintiffs have presented no case law supporting the allowance of depositions of "apex" employees in similar circumstances. Accordingly, Defendant's Motion for Protective Order Prohibiting the Depositions of its Top Executive Officers, Edward Liddy and Dan Hale, is GRANTED. [Doc. No. 44].

**C. DEFENDANT'S MOTION FOR PROTECTIVE ORDER WITH REGARD TO PLAINTIFFS' RULE 30(B)(6) DEPOSITION NOTICE [DOC. No. 52].**

 Defendant seeks a protective order prohibiting or restricting the subject matter

of Plaintiffs' Rule 30(b)(6) Notice for Depositions currently scheduled for June 17, 2003. Defendant challenges the Rule 30(b)(6) Notice on the grounds that it is overbroad, seeks irrelevant information, and is cumulative and duplicative of prior discovery. Plaintiffs have noticed 30(b)(6) deposition testimony for the following subject matters:

(1) Guidelines and policies for claims handling;

(2) The corporate structure of Allstate Insurance Company and its affiliate companies, parent companies, and related holding companies;

(3) Investment income for 2000, 2001, and 2002;

(4) The amounts invested and rates of return for 2000–2002;

(5) Compensation for claims personnel;

(6) Decisions, reports, studies, and analyses regarding reducing the severity of claims;

(7) Training and training materials designed to reduce severity of claims;

(8) Bad faith litigation involving Allstate Insurance Company;

(9) Complaints made to the Insurance Commissioner for the State of Oklahoma; and

(10) Reinsurance program information.[2]

The Court hereby **GRANTS** Defendant's Motion for Protective Order. [Doc. No. 52]. The Court finds that the disputed areas of the Notice are properly resolved by the protective order submitted by Defendant, which is attached hereto. All other areas of inquiry requested in Plaintiffs' Rule 30(b)(6) Notice are denied on the grounds that they are irrelevant to the issues of the lawsuit. The reasoning of the court in *Adams v. Allstate Ins. Co.*, 189 F.R.D. 331 (E.D.Pa.1999), is persuasive and in accord with this Court's ruling.

---

**2.** At the hearing, Plaintiffs withdrew their request for information regarding reinsurance.

(*See* Plaintiffs' Rule 30(b)(6) Deposition Notice at ¶ 10).

**D. DEFENDANT'S MOTION FOR LEAVE TO LIST EXPERT WITNESS ON BAD FAITH [DOC. NO. 56].**

Defendant moves the Court for leave to list an expert witness on bad faith. The Court **GRANTS** Defendant's Motion for Leave to List an Expert Witness on Bad Faith. [Doc. No. 56]. The date for listing an expert witness on bad faith is extended to July 1, 2003, for the sole purpose of allowing Defendant to add a witness on bad faith. The expert report shall be submitted by July 7, 2003.

## III. CONCLUSION

The Court **DENIES** Defendant's Motion to Compel [Doc. No. 36], except as to the production of any agreements of sale or appraisals, which Plaintiffs have agreed to produce, to the extent such documents exist. The Court **GRANTS** Defendant's Motion for Protective Order Prohibiting the Depositions of its Top Executive Officers, Edward Liddy, Thomas Wilson, and Dan Hale.[3] [Doc. No. 44]. The Court **GRANTS** Defendant's Motion for Protective Order regarding Plaintiffs' Rule 30(b)(6) Deposition Notice [Doc. No. 52], and holds that the disputed areas of Plaintiffs' Rule 30(b)(6) Notice are properly resolved by the protective order submitted by Defendant, which is attached hereto. The Court **GRANTS** Defendant's Motion for Leave to List an Expert Witness on Bad Faith. [Doc. No. 56]. The date for listing an expert witness on bad faith is extended to July 1, 2003, for the sole purpose of allowing Defendant to add a witness on bad faith. The expert report shall be submitted on or before July 7, 2003.

IT IS SO ORDERED.

## *PROTECTIVE ORDER*

CAME ON before the Court this 11th day of June, 2003, the Motion of Defendant Allstate Insurance Company ("Allstate") for a Protective Order with Regard to 30(b)(6) Notice. Upon review of the briefs submitted by counsel and having heard oral argument, and determining that the Motion, in part, has

merit, the Court hereby enters the following Protective Order:

1. With regard to Paragraph 1 of Plaintiffs' 30(b)(6) Notice ("the Notice"), Allstate shall designate a representative to give testimony on matters A, B, C, D and E. The subject matter of the testimony shall be limited, however, to first-party homeowners claims in the State of Oklahoma.

2. With regard to Paragraph 2 of the Notice, Allstate shall produce to Plaintiffs an organizational chart for Allstate's Tempe Central Property MCO, which includes Oklahoma. No deposition testimony shall be required of Allstate.

3. With regard to Paragraph 3 of the Notice, no deposition testimony shall be required of Allstate.

4. With regard to Paragraph 4 of the Notice, no deposition testimony shall be required of Allstate.

5. With regard to Paragraph 5 of the Notice, no deposition testimony shall be required of Allstate.

6. With regard to Paragraph 6 of the Notice, Allstate shall designate a representative to give testimony. The subject matter, however, shall be limited to the State of Oklahoma.

7. With regard to Paragraph 7 of the Notice, Allstate shall designate a representative to give testimony. The subject matter, however, shall be limited to homeowners claims in the State of Oklahoma.

8. With regard to Paragraph 8 of the Notice, no deposition testimony shall be required of Allstate.

9. With regard to Paragraph 9 of the Notice, Allstate shall produce a log of complaints to the Oklahoma Insurance Department arising out of homeowners claims for the years 2000, 2001 and 2002, as well as copies of complaint letters and responses. No deposition testimony shall be required of Allstate.

---

**3.** At the hearing, Plaintiffs withdrew their notice to take the deposition of Thomas Wilson.

10. With regard to Paragraph 10 of the Notice, no deposition testimony shall be required of Allstate.